IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JESSICA LINN KIMBLE, | ) | Civil No.: 3:15-cv-01641-JE |
| | ) | |
| Plaintiff, | ) | OPINION & ORDER |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Nancy J. Meserow
7540 S.W. 51st Ave.
Portland, OR 97219

       Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Lars J. Nelson
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. Pro. 25(d).

OPINION & ORDER - 1

JELDERKS, Magistrate Judge:


Jessica Linn Kimble ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## Procedural Background

Plaintiff filed her application for DIB and SSI on April 18, 2012, alleging disability beginning September 30, 2007. Tr. 13, 180. After Plaintiff's claim was denied initially and on reconsideration, a hearing was convened on February 27, 2014, before Administrative Law Judge ("ALJ") Paul Robeck. Tr. 29–63. The ALJ issued a decision on March 21, 2014, finding Plaintiff not disabled. Tr. 8–24. The decision became the final decision of the Commissioner on July 21, 2015, when the Appeals Council denied Plaintiff's subsequent request for review. Tr. 1–6. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Background

Born July 31, 1982, Plaintiff was 25 years old on the initial alleged onset date. Tr. 22, 180. Plaintiff has an 8th grade education and has not completed her GED. Tr. 38, 202. She has past relevant work as a fast food cashier, a machine operator, a security guard, and doing "production" at a thrift store. Tr. 202. Plaintiff alleges disability due to scoliosis, chronic back pain, anxiety, posttraumatic stress disorder ("PTSD"), and depression. Tr. 16, 44, 66.

# Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations. 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If

the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

**The ALJ's Decision**

At the first step of the disability analysis, the ALJ found Plaintiff met the insured status requirements through December 31, 2009, and had not engaged in substantial gainful activity since the alleged onset date, September 30, 2007. Tr. 13.

At the second step, the ALJ found Plaintiff had the following severe impairments: scoliosis, anxiety, PTSD, and depression. Tr. 13.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings. 20 C.F.R. Part 404, Subpart P, App. 1; Tr. 13–14.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can lift and carry up to 10 pounds. When seated, she should be allowed to stand for 30 minutes with no interruption in the work process. She is limited to simple, repetitive tasks consistent with unskilled work.

Tr. 15.

At the fourth step of the disability analysis, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 22.

At the fifth step, the ALJ found that Plaintiff retained functional capacity required to perform jobs that existed in significant numbers in the national economy. Tr. 23. Relying on the VE's testimony, the ALJ cited semiconductor wafer breaker, addresser, and document sorter as examples of work Plaintiff could perform. Tr. 23. Based upon the conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act, from September 30, 2007, through the date of this decision. Tr. 23.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at step five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039–40.

## Discussion

Plaintiff contends that the ALJ (1) improperly rejected the opinions of Dr. Nicoloff and P.A. Garfias resulting in an RFC that failed to include all of Plaintiff's limitations; (2) failed to articulate an unambiguous RFC; (3) failed to present a hypothetical to the VE that fully reflected Plaintiff's limitations; and (4) failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony.

## I. Evaluating Medical Evidence

As noted above, Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Nicoloff and P.A. Garfias resulting in an RFC that fails to include all of Plaintiff's limitations. The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing the ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may "reject

the opinion of a non-examining physician by reference to specific evidence in the record." <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1244 (9th Cir. 1998). Care providers who are not "acceptable medical sources," such as physicians' assistants and counselors are still considered sources under the regulations that the ALJ can use in determining the "severity of the individuals impairment(s) and how it affects the individuals ability to function." SSR 06-03p at *2. An "other" source cannot "establish the existence of a medically determinable impairment," <u>Id.</u>; and an ALJ may discount the opinion of an "other source" by providing germane reasons for doing so. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A. Dr. Megan Nicoloff, PsyD**

Plaintiff contends that the ALJ improperly rejected the opinion of the non-examining medical expert, Dr. Nicoloff. As the consulting expert for the SSA, Dr. Nicoloff reviewed the Plaintiff's medical records pertaining to mental health and offered her opinion. Tr. 111–13.

**1. Limitation to 1-2 Step Tasks**

After reviewing the file, Dr. Nicoloff determined that the medical evidence and Plaintiff's ADLs "support limiting [her] to simple 1-2 step tasks with no public contact." Tr. 99, 112. Dr. Nicoloff further explained that Plaintiff "is able to understand and carry out simple 1-2 step tasks on a consistent basis. [Plaintiff] can do detailed[,] complex [] tasks but not on a consistent basis." Tr. 117.

The ALJ gave "great weight" to Dr. Nicoloff's opinion, "because it [was] supported by the medical record." Tr. 21. Yet, despite giving "great weight" to Dr. Nicoloff's opinion, which limited Plaintiff to "1-2 step tasks," the ALJ stated: "Accordingly, the claimant is limited to *simple, repetitive tasks* consistent with unskilled work." Tr. 21 (emphasis added).

In professing to accept Dr. Nicoloff's opinion, but failing to include Dr. Nicoloff's precise limitation in the RFC, the ALJ effectively rejected the doctor's opinion. <u>See</u> <u>Bobbitt v. Colvin</u>,

No. 3:13-cv-01320-HZ, 2014 WL 2993738, at *9 (D. Or. Jul. 1, 2014) (ALJ erred by accepting a doctor's opinion without expressly including the doctor's proposed limitation in the RFC). To reject the opinion of a non-examining physician, the Commissioner must make "reference to specific evidence in the medical record." Sousa, 143 F.3d at 1244.

The Commissioner argues that the ALJ was not required to "provide reasons to discount an opinion, where the ALJ did not actually reject conclusions and instead incorporated them into the RFC assessment." Def.'s Br. at 11 (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)). However, unlike in Turner, here, the ALJ did not incorporate the doctor's conclusion in the RFC. By stating Plaintiff was limited to simple, repetitive tasks, the ALJ essentially rejected Dr. Nicoloff's opinion, because a limitation to "1-2 step tasks" is more restrictive than a limitation to "simple, repetitive tasks." Dschaak v. Colvin, No. 3:13-cv-02127-MA, 2015 WL 181803 at *5 (D. Or. Jan. 14, 2015) ("Several recent cases from this court have held that a limitation to one to two step instructions is a more restrictive limitation than the limitation of simple, routine tasks."); Bobbitt, 2014 WL 2993738, at *9 (same).

Alternatively, the Commissioner argues that 1-2 step tasks is the least Plaintiff could do, rather than the most that Plaintiff could do. Dr. Nicoloff clearly indicated that 1-2 step tasks is the most that Plaintiff can do, opining that Plaintiff "can do detailed complex [] tasks but not on a consistent basis" and that Plaintiff would have "difficulty with detailed tasks." Tr. 116–17. The regulations unequivocally provide that the RFC is the most a claimant can do on a "regular and continuing basis." 20 C.F.R. §404.1545(b)-(c); SSR 96-8p at *2 ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Dr. Nicoloff made clear that Plaintiff could not do detailed or complex tasks on a "regular and continuing basis." Dr. Nicoloff indicated that the most that Plaintiff could do "consistently" was 1-2 step tasks. Accordingly, the Commissioner's argument lacks merit.

The Commissioner additionally argues that the "Court can reasonably construe the ALJ's decision as a whole to provide a proper basis for restriction to unskilled work and by extension discounting one-to-two step tasks." Def.'s Br. at 12. However, as discussed above, it is erroneous to discount the limitation to 1-2 step tasks. Bobbitt, 2014 WL 2993738, at *9. Moreover, the Commissioner's proposed rationale constitutes an impermissible *post hoc* rationalization. Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (A reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (internal citations omitted)).

The Commissioner finally argues that if the ALJ erred, any such error was harmless. However, had the ALJ included Dr. Nicoloff's "1-2 step task" limitation in the RFC, it would have restricted Plaintiff to "Level One Reasoning" jobs. "Level One Reasoning is defined as having the reasoning ability to apply commonsense understanding to carry out simple one-or-two step instructions[.]" King v. Colvin, No. 3:13-cv-01457-ST, 2014 WL 5092216, at *12 (D. Or. Oct. 8, 2014) (citing Chase v. Colvin, No. 06:12-cv-01857-HZ, 2013 WL 5567082, at *5 (D. Or. Oct. 9, 2013); Whitlock v. Astrue, No. 3:10-cv-357-AC, 2011 WL 3793347, at *5 (D Or Aug. 24, 2011)) (internal quotations omitted). Because the Ninth Circuit has held that a limitation to 1-2 step tasks is not consistent with Level Two Reasoning, the error was not harmless. Rounds v. Commissioner Social Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015) ("There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two- step tasks and the demands of Level Two reasoning . . . The Commissioner resists the obvious similarity between Rounds' RFC and Level One reasoning…[.]"). Because the ALJ's erroneous RFC led the VE to identify jobs that required Level Two and Level Three Reasoning, the ALJ's error was not inconsequential to the ultimate non-disability decision. [2] Stout, 454 F.3d at 1054; See DICTIONARY

---

[2] Notwithstanding the failure to include the 1-2 step tasks limitation, the RFC as stated created a conflict with the

OF OCCUPATIONAL TITLES, (4th ed. 1991) 209.587-010, 249.587-018, 726.687-046.

## 2. Moderate Difficulties in Concentration, Persistence, and Pace

Dr. Nicoloff also determined that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace, which the ALJ accepted at step two. Tr. 14, 113. Plaintiff argues that the ALJ failed to account for moderate difficulties with concentration, persistence or pace in the RFC.

The Commissioner asserts that there is no requirement that moderate limitations result in specific RFC limitations and that by including a limitation to "simple, repetitive tasks," the ALJ reasonably accounted for moderate difficulties with concentration, persistence or pace. The Commissioner relies on Stubbs-Danielson, 539 F.3d 1169, 1174 (9th Cir. 2008), which holds that a limitation to "simple, repetitive tasks" *can* encompass moderate difficulties with concentration, persistence or pace *if* the limitation is "consistent with restrictions identified in the medical testimony." Id. Here, unlike in Stubbs-Danielson, the limitation to "simple, repetitive tasks" is not consistent with the restrictions in the medical testimony because Dr. Nicoloff's testimony included a restriction to "1-2 step tasks." Tr. 99, 112.

Citing an Eighth Circuit case, the Commissioner argues that "by consider[ing] Dr. Nicoloff's opinion, the ALJ accounted for moderate limitations in concentration, persistence, and pace." Def.'s Br. at 17; see Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001). In Howard, a doctor opined that the claimant had deficiencies with concentration, persistence and pace; and that same doctor also provided the limitation to simple, repetitive tasks which was included in the

---

Document Sorter job. The RFC limited Plaintiff to "simple, repetitive tasks," which are consistent with Reasoning Level Two, but Document Sorter requires Reasoning Level Three. Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015); Dictionary of Occupational Titles, (4th ed. 1991) 249.587-018. The Commissioner argued that there was no apparent conflict because the Specific Vocational Preparation ("SVP") for Document Sorter was consistent with Plaintiff's abilities. The Commissioner did not cite to any case law for the proposition that consistency with the SVP obviates what would be an apparent conflict between Reasoning Levels. To the contrary, case law indicates that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." Id.

RFC. Id. The case is clearly distinguishable because here, Dr. Nicoloff's limitation was not included in the RFC, therefore, Howard is inapposite.

The Commissioner also argues that the limitation to "simple, repetitive tasks" was sufficient, citing "objective findings" that Plaintiff's "[a]ttention and concentration were normal *on testing*." Def.'s Br. at 16 (emphasis added). Although the medical providers and social workers noted that Plaintiff's attention and concentration were normal; a close review of the record reveals that those observations were not based on objective medical testing. Tr. 19, 399, 426, 453. While the so-called "objective findings" may be relevant as lay-witness observations, they do not warrant deference sufficient to supplant Dr. Nicoloff's medical opinion. Tr. 399, 426, 453. Further, the ALJ never made the finding that the lay witness observations conflicted with those of Dr. Nicoloff's. To the contrary, the ALJ stated "[t]hese objective findings support functional limitations caused by mental health impairment," and that Dr. Nicoloff's opinion was "*supported by the medical record.*" Tr. 19, 21 (emphasis added). As such, the Commissioner's argument amounts to a *post hoc* rationalization, which the Court must reject. Bray v. Commissioner, 554 F.3d 1219, 1225 (9th Cir. 2009). ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.")

## B. Larissa Whalen-Garfias, PA

Plaintiff contends that the ALJ improperly rejected the opinion of the treating provider, Larissa Whalen-Garfias, P.A.[3] In treating Plaintiff, P.A. Garfias opined that Plaintiff could work in a jobs program "especially if only 3 hours a day"—but Plaintiff should "be allowed to stand as

---

[3] The Plaintiff, citing several district court decisions and unpublished Ninth Circuit opinions, argued that there was an apparent conflict between the DOT and the limitation in the hypothetical question to the VE because the DOT does not address whether the identified jobs would allow for standing every 30 minutes. The regulations indicate that in a situation where there is an unusual limitation as to the ability to sit or stand, a VE should be consulted. SSR 83-12. Here, a VE was consulted, and she identified jobs that could accommodate the limitation of standing every 30 minutes.

needed" and "avoid prolonged sitting." Tr. 336.

The ALJ purported to give the opinion "great weight because it is consistent with the record as a whole, although the evidence indicates she can work for more than three hours per day." Tr. 21. The ALJ did not comment on the actual limitations set forth by P.A. Garfias. Tr. 21. The Commissioner argues that the ALJ discounted those limitations in light of other evidence in the record. Def.'s Br. at 14. However, contrary to the Commissioner's contention, the ALJ did not explain why he did not adopt the postural limitation. Failure to comment on the limitation was error, because the ALJ did not provide a reason to reject the limitation.

The Commissioner argues that the ALJ properly evaluated the opinion of P.A. Garfias because she is not an "acceptable medical source," but rather an "other source." 20 C.F.R. §§ 404.1502(a), 416.902(a); SSR 06-03p at *2.The ALJ can discount testimony from "other sources" by providing "germane reasons" for doing so. <u>Molina</u>, 674 F.3d at 1111. Here, however, the ALJ failed to provide *any* reasons for rejecting P.A. Garfias' testimony, unlike in <u>Molina</u>, where the "ALJ rejected [the physicians assistant's] views on the grounds that [the physicians assistant's] opinions were 'quite conclusory,' provided very little explanation of the evidence relied on, were not supported by Molina's objective medical condition, and were inconsistent with the opinion of Dr. Yost, the examining psychiatrist." <u>Id.</u>

The Commissioner further posits that despite the ALJ's failure to explicitly address the postural limitations, his path can reasonably be discerned because the ALJ stated that the "residual functional capacity is supported by the evidence of record." The Commissioner argues that statement "by extension undermines Ms. []Garfias's opinion." Def.'s Br. at 15; Tr. 22. The Commissioner cites Mr. Ortiz's description of Plaintiff's daily activities, as well as an MRI that "revealed only mild to moderate narrowing of the disk space," and contends that the "ALJ *could* reasonably construe these objective findings as consistent [with] the limitations in the RFC."

Def.'s Br. at 15 (emphasis added). The Commissioner urges the Court to "construe this evidence as undermining Ms. []Garfias' opinion." Def.'s Br. at 16. In so requesting, the Commissioner invites the court to speculate as to the ALJ's reasoning. I decline to do so. SSR 06-03p at *6 (ALJ must "ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]"); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (the Court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."). Therefore, the ALJ failed to provide germane reasons for rejecting the opinion of P.A. Garfias.

## II. Scrivener's Error in the RFC

As Plaintiff points out, the RFC's language is unclear. The RFC states that: "When seated, [Plaintiff] should be allowed to stand for 30 minutes with no interruption to the work process." Tr. 15. The confusing sentence is repeated several times throughout the ALJ's opinion. Tr. 19, 21, 22. The Commissioner concedes that the wording constitutes error, describing the RFC, as crafted, "nonsensical" and attributes the strange phrasing of the RFC to a scrivener's error. Such an error is potentially harmful.[4]

While Plaintiff argues that the RFC is subject to multiple interpretations, the alternate readings proposed by Plaintiff are implausible. Pl.'s Br. at 15 ("stand for 30 minutes 'when seated' [only] upon arrival at work" or "stand for 30 minutes *every time* she is seated[.]"). On the other hand, the interpretation set forth by the ALJ is plausible: the ALJ used the word "for" when

---

[4] The case law in this area is sparse, the rule emerging in our sister courts indicates that unclear language or a typographical error in the RFC is harmful if it creates an actual ambiguity. Martinez v. Astrue, 2014 WL 310387, at *16 (N.D.Cal. Jan. 28, 2014) (holding that "the ALJ committed legal error by articulating an ambiguous RFC…" but the error was harmless because "read in its proper context, it is clear" what the ALJ meant.); Peters v. Colvin, 2015 WL 12670518, at *6 (E.D. Wa. Dec. 14, 2015) (remanding for clarification where a typographical error created an ambiguity in the RFC.); see also ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 237–38 (2012) (laying out the guiding principles for applying the absurdity doctrine to correct typos: "(1)The absurdity must consist of a disposition that no reasonable person could intend… (2) The absurdity must be reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error….").

he meant to say "every," such that the RFC should read as: "When seated, she should be allowed to stand [every] 30 minutes with no interruption in the work process." This interpretation is well supported because it matches the phrasing used by the ALJ in his hypothetical question to the VE. See Tr. 57. Because this is the only reasonable interpretation of the RFC, the RFC is not ambiguous and the ALJ's scrivener's error was harmless.

### III. Error in Relying on the VE Testimony

The Plaintiff alleges that the ALJ erred in relying on the VE testimony. As noted above, the ALJ erred in failing to include in the RFC Dr. Nicoloff's limitation to 1-2 step tasks, and P.A. Garfias' postural limitations.[5] The ALJ was required to include those limitations in the hypothetical questions to the VE. Valentine v. Commissioner, 574 F.3d 685, 690 (9th Cir. 2009) ("The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out *all* the limitations and restrictions of the particular claimant." (internal quotations omitted)). Because, the ALJ failed to include those limitations in the hypothetical questions to the VE, the VE's testimony had no evidentiary value and it was error for the ALJ to rely on it. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." (quoting Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984)).

### IV. Error in Rejecting Plaintiff's Testimony

Plaintiff alleges that the ALJ improperly discounted her testimony. When a claimant has

---

[5] Plaintiff additionally argued at length that Plaintiff had less than a limited education and that the ALJ erred in finding that Plaintiff had a limited education. An education level from 7th grade to 11th grade is generally considered to be a limited education. C.F.R. § 404.1564(b)(3). Plaintiff has an 8th grade education, but she contends that the record contains evidence contradicting the finding that she has a limited education. Tr. 38. Plaintiff relies on the fact that she was held back in second grade, had learning problems, does not have a driver's license, and has failed to obtain a GED. However, none of that evidence contradicts a finding that Plaintiff had a limited education. Furthermore, the mere existence of evidence contradicting an ALJ finding is insufficient to overturn it, the ALJ's finding need only be supported by substantial evidence. Matney, 981 F.2d at 1019. The fact that Plaintiff had an 8th grade education is substantial evidence that Plaintiff had a limited education.

medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his or her] symptoms only by offering specific, clear and convincing reasons for doing so." Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). Pursuant to SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16-3p, at *1; also compare SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In Andre v. Colvin, 6:14-cv-02009-JE (D. Or. Oct. 13, 2016), I recently concluded that, for this reason, retroactive application of the new SSR is appropriate. See Smolen, 80 F.3d at 1281 n.1 ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993)) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively). The

new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, at *1. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, at *10. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." SSR 16-3p, at *10. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" SSR 16-3p, at *9. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9.

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "[o]ther factors concerning [the individual's] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

## A. Physical Symptoms

Plaintiff testified that she suffers from scoliosis, chronic back pain, and a leg length discrepancy. Tr. 16, 37. She also asserted that she had problems with short term memory due to PTSD. Tr. 38. She further attested that she gets weak and needs to lie down or sit down. Tr. 38.

Additionally, she stated that she cannot sit for more than an hour and she cannot stand for more than an hour at a time. Tr. 43–44. Plaintiff explained that she would not be capable of performing an eight hour job, even if it had a sit and stand as needed option, because she would need to lie down to rest and readjust her back. Tr. 47. She also asserted that she requires four naps or rests a day, each time for a couple of hours. Tr. 256.

The Plaintiff first alleges error as to the ALJ's findings regarding the credibility of her physical symptoms. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 17. In order to discredit subjective symptom testimony, the ALJ "must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen, 80 F.3d at 1284 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). The Commissioner argues that the ALJ was not required to use "magic words" to reject Plaintiff's testimony. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Although the ALJ did not need to use magic words, he was required to specifically identify the testimony he was rejecting. Treichler, 775 F.3d at 1102. The ALJ failed to do so. As in Treichler, the ALJ here merely quoted boilerplate language, but failed to identify any specific parts of the claimant's testimony that he found not credible. This is clear error. Id. at 1103. ("ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination. After making this boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why.") (internal citations omitted).

In a similar vein, the Commissioner further contends that it was enough that the ALJ summarized the symptom testimony and provided reasons for discounting that testimony. Here,

however, the ALJ did not provide reasons for discounting the testimony, but merely summarized evidence supporting his determination.[6] Tr. 17–18. The Commissioner urges that it is "well within the court's faculties to infer which reasons speak generally, which reasons speak to specific complaints, and which complaints may have been incorporated into the RFC." Def.'s Br. at 18. The argument is spurious: as the Ninth Circuit made abundantly clear, the Court may not make such inferences. Treichler, 775 F.3d at 1103. ("Because the ALJ set out his RFC and summarized the evidence supporting his determination, the government argues that we can reasonably infer that the ALJ rejected Treichler's testimony to the extent it conflicted with that medical evidence. But we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." (internal citations omitted)). By failing to specifically identify the testimony that he found not credible, the ALJ failed to provide clear and convincing reasons to reject claimant's testimony regarding her physical symptoms.

## B. Mental Health Symptoms

Plaintiff testified that she suffers from depression, anxiety, and PTSD. 16, 44. Plaintiff reported having difficulties with memory, concentration, following instructions, and staying focused. Tr. 38, 253, 396–97. She complained of mood swings and social anxiety. Tr. 254, 411–12. She explained that her PTSD is triggered by older men because it reminds her of the sexual abuse that she suffered as a child. Tr. 40. Plaintiff asserted that she suffered from flashbacks and nightmares as a result of her PTSD. Tr. 411–12. Her anxiety causes dizziness and she occasionally experiences panic attacks when she goes shopping. Tr. 414. The ALJ provided various reasons for discrediting Plaintiff's testimony regarding mental health symptoms.

---

[6] The Commissioner repeatedly asserted that the ALJ provided reasons for discounting Plaintiff's physical symptoms; however the Commissioner's argument is unsupported by citations or specific examples. Def's Br. at 6–7. The Commissioner further argues that Plaintiff waived any challenges to the ALJ's reasons for discounting her physical limitations "by failing to raise them in her brief with any specificity." Def.'s Br. at 7. However, Plaintiff clearly challenged the absence of reasons for discounting the physical symptoms. See Pl.'s Br. at 16–17.

The ALJ cited Plaintiff's "limited and sporadic work history" as evidence that "factors other than her alleged impairments affect her ability to maintain fulltime employment." Tr. 20. The Commissioner relies on Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), in which the claimant had an "extremely poor work history" and "years of unemployment between jobs[.]" In support, the ALJ notes that Plaintiff turned 18 in 2000, and had no income from 2001-2004. Tr. 20. While that may be true, Plaintiff began working steadily in January 2005 and her lack of income from 2001-2004 is almost certainly due to the fact that she gave birth to three children from 1999-2003. Tr. 261. Further, the ALJ mischaracterized the record by focusing exclusively on Plaintiff's earnings, rather than her hours worked. Tr. 20. ("earnings record indicates *limited earnings* even before the alleged onset of disability.") (emphasis added). The ALJ pointed out that Plaintiff made only "$5,556 in 2005, $13,792 in 2006, and $6,932 in 2007," but he failed to note she worked full-time over most of that period, up until the onset date in September, 2007. Tr. 20, 202. Because Plaintiff earned only $6.50 per hour, her overall income figures are misleading. Tr. 202. By focusing on Plaintiff's earnings, rather than hours worked, the ALJ's finding that Plaintiff had little propensity to work is not supported by substantial evidence.

The ALJ also argued that Plaintiff's "job search activity suggests the claimant is quite aware of her limitations and believes she can work despite them." Tr. 20. The Commissioner relies on Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996), where the claimant "completed an electronics course in 1984 and unsuccessfully sought work in the field[.]" In Macri, the court reasoned that the claimant "could not find work in 1985 and 1986 because of a slowdown in the electronics industry[.]" Id. Here, in contrast, Plaintiff did not complete any such training courses and her inability to find work was never attributed to a slowdown in any industry. Furthermore, Plaintiff testified that she did not believe she could work. Tr. 47. The Court acknowledges that Plaintiff was receiving TANF (Temporary Assistance for Needy Families) benefits which require

beneficiaries to participate in a jobs program and apply for jobs. However, Plaintiff testified that she only participated in the jobs program until 2009, and she repeatedly requested and was granted waivers from the job seeking requirement. Tr. 49–56. Because Plaintiff's job search activities were required by TANF, the record as a whole suggests that her involvement in the program was motivated by her financial need rather than a belief that she could sustain gainful employment.

Additionally, the ALJ alleged that Plaintiff's marijuana use "weakens her credibility because it shows a pattern of voluntary injurious behavior." Tr. 20. The Commissioner limited the scope of that argument to the allegation that Plaintiff made "inconsistent statements about marijuana" conceding that "the Commissioner does not defend the remaining findings with respect to marijuana." Def.'s Br. at 10. The inconsistency alleged by the ALJ was that "[t]he claimant continues to use marijuana even though she admits it does not relieve her alleged pain." Tr. 20. The Plaintiff's medical records show that she reported that "[m]arijuana has helped" with her pain but that it was "not providing pain control." Tr. 326, 385. That marijuana helps relieve Plaintiff's pain but does not provide full relief, is not an inconsistent statement. Because the Plaintiff's statements were not inconsistent, this was not a clear and convincing reason to discount her testimony.

The ALJ also argued that Plaintiff's recent work activity is evidence that she is capable of a higher level of functioning than she claims. Tr. 20. After her alleged onset date, Plaintiff worked twice a week for five months as a security guard. Tr. 46, 202. The Ninth Circuit has held that a trial period of work for less than nine months is not evidence that a person is not disabled. Lingenfelter v. Astrue, 504 F.3d 1028, 1039 (9th Cir. 2007) ("By analogy, if working for almost nine months is not evidence that a disability benefit recipient is no longer disabled, then a nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairments."). Furthermore, the trial work

period does not indicate that Plaintiff is capable of a higher level of functioning than she claims, because over the course of five months Plaintiff only worked about 16 full days. Tr. 193, 202 (Plaintiff made $960.50 in that time period, and she indicated that she was paid $7.50 per hour, thus she worked 128 hours or 16 eight-hour days). Plaintiff had to quit the job because it was too much walking and she could not lie down when she needed to. Tr. 46, 202. This is consistent with Plaintiff's testimony that she is not capable of working full-time and that she frequently needs to lie down. Tr. 47. Accordingly, Plaintiff's work history is not a clear and convincing reason to discount her testimony.

The ALJ further supported his adverse credibility by finding Plaintiff received merely conservative treatment. Tr. 19–20. Conservative treatment may be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). The ALJ's finding was based on the facts that Plaintiff (1) "has not been hospitalized for psychiatric reasons," (2) has only had a "limited use of counseling services and medication," (3) was not seeing a counselor as previously recommended, and (4) "did not take prescribed mental health medication because she became pregnant." Tr. 20.

The ALJ cites an unpublished Ninth Circuit case for the proposition that a lack of hospitalization "is consistent with conservative treatment." See Brumfield v. Astrue, 281 Fed. Appx. 681, 682 (9th Cir. 2008). Although the one-page opinion in Brumfield is light on details, it appears that the Brumfield court was referring to hospitalizations for physical symptoms rather than psychiatric hospitalization. Id. at 682–83. Thus, the case is distinguishable because hospitalization in the context of mental health is different because a person with mental health problems may not recognize the importance of seeking treatment. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); see also Bagdoyan v. Colvin, 2013 WL 941965, at *4 (C.D.Cal. Mar. 11, 2013) ("the lack of history of psychiatric hospitalization … did not constitute a clear and

convincing reason" to discount the plaintiff's testimony); <u>Delgiudice v. Barnhart</u>, 2006 WL 2830792, at *5 (C.D.Cal. Sep. 29, 2006) ("the ALJ's citation to Plaintiff's lack of hospitalization is not a clear and convincing reason for rejecting Plaintiff's credibility regarding her alleged mental limitations."). Despite not having been hospitalized for psychiatric reasons, Plaintiff was diagnosed and treated for PTSD and "[m]ajor depressive disorder." Tr. 291, 410, 426.

The ALJ relies on a note in Plaintiff's medical record that she was not seeing a counselor as recommended, Tr. 20, 294, however, the fact that Plaintiff had failed to follow through on a referral to a counselor, was noted a mere nine days after the referral was made. Tr. 294, 304. Plaintiff was referred to a counselor in May and attended her first session in July. Tr. 294, 395. A delay is not clear and convincing evidence that her use of counseling services was limited. As Plaintiff correctly points out, the Ninth Circuit has criticized reliance on a lack of treatment as a basis to reject mental complaints. <u>Nguyen</u>, 100 F.3d at 1465 (it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Furthermore, it does not appear that Plaintiff's use of medication was "limited," as the ALJ found. Tr. 20. Plaintiff repeatedly returned to mental health care providers and counselors to adjust her prescriptions and work on strategies to improve her mental health. Tr. 292–94, 305–06, 395, 407, 411, 426–27. (originally prescribed Cymbalta, but stopped taking it because it increased her depression and anxiety and caused a loss of appetite. Subsequently prescribed Zoloft and shortly thereafter the dosage was increased. Most recently, prescribed Celexa.) The ALJ's finding is not supported by substantial evidence.

The ALJ finally argues that Plaintiff did not "have a sincere interest in achieving medical and functional improvement," because she stopped taking her medications when "she became pregnant." Tr. 20. The ALJ's argument is unconvincing. Plaintiff's concern over the health of her

unborn child was "a good reason" to stop taking her medication. See Carmickle, 533 F.3d at 1162. Therefore, the ALJ's findings regarding treatment did not constitute clear and convincing reasons for discounting her testimony.

The ALJ further impugned Plaintiff's testimony, citing evidence showing that "[a]ttention and concentration were normal." Tr. 19, 399, 426, 453. The Commissioner argues that "the ALJ found that normal mental status examinations, supported the RFC assessment more than her subjective complaints." Def.'s Br. at 7. A thorough review of the record reveals that the "mental health examinations" were actually observations of Plaintiff's behavior during visits to medical providers, not evaluations of her functional capacity. Tr. 399, 426, 453. As previously discussed, the observations were not made by doctors, but rather a physician's assistant, a midwife, and a social worker. Tr. 399, 426, 453. Of the three "mental status examinations," two were actually "*physical* examinations." Tr. 426, 453 (emphasis added). Furthermore, the third examination, although labeled a "mental status examination," does not include any evidence of testing and was part of a social worker's examination that included general observations regarding dress, grooming, hygiene, and facial expressions. Tr. 399. There was, however, some testing done at that appointment that indicates Plaintiff's concentration was *not normal*. Plaintiff underwent two tests, the PHQ9 for depression and the GAD7 for anxiety. Results from both tests indicated that she had "moderately severe" symptoms. Tr. 397. Her depression symptoms included "difficulty concentrating" and her anxiety symptoms included "decreased concentration." Tr. 397. Therefore, the ALJ did not provide clear and convincing reasons to discount Plaintiff's subjective complaints regarding concentration.

Finally, the ALJ asserts that Plaintiff's activities of daily living "suggest greater functioning than alleged in her application." Tr. 19. The ALJ refers to Plaintiff's ability to care for five children, prepare meals, perform personal care, do household chores, use public transportation,

use a computer, talk on the phone, read, draw, and watch television. Tr. 19. The Commissioner argues that such activities are inconsistent with Plaintiff's "problems remembering, completing tasks, concentrating, understanding and following instructions." Def.'s Br. at 8.

The Commissioner contends that Plaintiff's activities are comparable to those in <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). In <u>Rollins</u>, the claimant attended to all of her children's needs and she left the house daily to run errands and attend her children's activities. <u>Id.</u> In contrast, Plaintiff is not capable of attending to all of her children's needs; her three oldest children take care of themselves, the older children often help her with the younger children, her oldest daughter has to help her clean the house and do the laundry, and she is unable to lift her youngest child. Tr. 41–43, 228, 251, 261. The claimant in <u>Rollins</u> attended her children's soccer games and taekwondo lessons, but Plaintiff does not attend *any* of the activities of her children. Tr. 41. Additionally, the ADLs in <u>Rollins</u> provided clear and convincing evidence to discount claimant's testimony that she had "*totally* disabling pain." <u>Id.</u> (emphasis added). Here, Plaintiff testified that she had difficulties with memory, concentration, following instructions, and staying focused. Tr. 38, 253, 396–97. Therefore, <u>Rollins</u> is inapposite.

As the Ninth Circuit has repeatedly stated, the mere fact that a claimant can carry out minimal activities, or that a claimant attempts to lead a normal life, does not mean they are foreclosed from disability benefits. <u>See, e.g.</u>, <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007); <u>Molina</u>, 674 F.3d at 1112–13 (The "claimant need not vegetate in a dark room to be eligible for benefits.") (citation omitted). An ALJ may discount the testimony of a claimant if the daily activities "are incompatible with the severity of symptoms alleged[.]" <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1165 (9th Cir. 2014) (citing <u>Orn</u>, 495 F.3d at 639). Plaintiff's ability to care for her children, do some chores, watch television, talk on the phone, etc. are not incompatible with Plaintiff's testimony that she had difficulties with memory, concentration, following instructions, and staying

focused. As such, the ALJ's general conclusions do not meet the rigorous specific, clear and convincing standard. Dodrill, 12 F.3d at 918; see SSR 16-3p.

**V. Remand**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted, the court follows the "three-part credit-as-true standard." Garrison, 759 F3d at 1020. Under this standard the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further administrative proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Id. If a court concludes that a Plaintiff meets the three criteria of the credit-as-true standard, then the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." Id. at 1021 (citations omitted).

Here, the first requisite is met. I conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence and that his decision contained errors of law. However, the second requisite is not met, as the record in this case is not fully developed. Even if the improperly discounted testimony of Plaintiff and the improperly discredited opinions of Dr. Nicoloff and P.A. Garfias were credited as true, the VE did not provide an opinion regarding the limitations Plaintiff wishes the Court to credit. Accordingly, crediting the improperly discredited evidence requires re-

formulation of the RFC and corresponding question to the VE. Therefore, the record is still not fully developed and it is not clear that Plaintiff is, in fact, disabled. Remand for further proceedings is the appropriate remedy. <u>Treichler</u>, 775 F3d at 1105. ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

On remand, the ALJ shall (1) accept Dr. Nicoloff's and P.A. Garfias' opinions and incorporate them into the RFC or provide legally sufficient reasons for their rejection, (2) draft an RFC that includes all of Plaintiff's limitations, (3) obtain additional VE testimony regarding what work Plaintiff can do, if any, (4) resolve any remaining inconsistencies concerning Reasoning levels that exist between the VE's conclusions and the DOT, (5) accept Plaintiff's testimony or provide legally sufficient reasons for discounting it, and (6) conduct any additional proceedings as indicated by the results of the foregoing instructions.

## <u>Conclusion</u>

For the reasons discussed above, the Commissioner's ultimate decision was not based on substantial evidence and free of harmful legal error. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for additional administrative proceedings consistent with this Opinion and Order.

DATED this <u>4th</u> day of <u>August</u>, 2017

   /s/ John Jelderks                 
John Jelderks
U.S. Magistrate Judge